# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Luis S. R., | Case No. 26-cv-01482 (JWB/ECW) |
| Petitioner, | |
| v. | **ORDER** |
| Immigration and Customs Enforcement (ICE); Eric Klang, *in his official capacity as Sheriff of Crow Wing County, Minnesota*; David Easterwood, *in his official capacity as Acting Field Office Director of the Saint Paul Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement*; Todd Lyons, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as U.S. Secretary of Homeland Security*; and Pamela Bondi, *in her official capacity as Attorney General of the United States*, | |
| Respondents. | |

This matter is before the Court on Petitioner Luis S.R.'s [1] Amended Petition for Writ of Habeas Corpus. (Dkt. 12.) This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Dkt. 6.) For the following reasons, this Court recommends that the Amended Petition for Writ of Habeas Corpus (Dkt. 12) be denied.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders and report and recommendations in immigration matters.

## I.    BACKGROUND

Petitioner is a citizen of Cuba who entered the United States in 1980.  (Dkt. 12 ¶ 20, Dkt. 4 ¶ 4.)  Petitioner is 68 years old.  (Dkt. 12 ¶ 33.)  Petitioner asserts, and Respondents do not contest, that Petitioner suffers from serious medical issues, including cervical spondylolysis, chronic back pain, Type 2 diabetes, hypertension, osteoarthritis, recently occurring stomach ulcers, recently occurring gastrointestinal bleeding requiring hospitalization, and recently occurring anemia.  (*Id.* ¶ 6.)

In 1982, Petitioner was convicted of Robbery with a Deadly Weapon and Possession of a Firearm.  (Dkt. 4 ¶¶ 6-7.)  Petitioner became subject to a final order of removal on July 3, 1986.  (*Id.* ¶¶ 8-9.)  However, Respondents did not effectuate Petitioner's removal at that time.

Petitioner was released on parole on September 27, 1990.  (*Id.* ¶ 10.)  On February 19, 1998, Petitioner's parole was revoked due to subsequent felony convictions, and Petitioner was returned to immigration custody on February 27, 1998.  (*Id.* ¶¶ 12-13.)  On April 1, 1999, Petitioner was again released on parole.  (*Id.* ¶ 14.)  Petitioner was subsequently convicted of another felony.  (*Id.* ¶ 15.)  In 2017, Immigration and Customs Enforcement ("ICE") arrested Petitioner, but later released him on an Order of Supervision ("OSUP").[2]  (*Id.* ¶ 16.)  Petitioner reported for a check-in pursuant to his

---

[2]    The Declaration of Angela Minner states that Petitioner was arrested on July 5, 2017 and released on January 6, 2017.  (Dkt. 4 ¶ 16.)  It appears that these dates may have been transposed or he was released in 2018.  In any event, Petitioner does not contest that he was arrested in 2017 but later released.

OSUP on December 11, 2018, but did not attend any of his other required check-ins. (*Id.* ¶ 17.)

On or about July 22, 2025, Petitioner attempted to enter Canada to claim asylum. (*Id.* ¶ 19.) Petitioner was arrested and returned to ICE custody. (*Id.*) On July 25, 2025, ICE issued a Notice of Revocation of Release explaining that Petitioner's OSUP was revoked because he did not comply with his conditions of release and conducted an informal interview with Petitioner regarding the OSUP revocation. (*Id.* ¶ 20; Dkt. 4-1 at 1-3.) ICE Enforcement and Removal Operations ("ERO") determined that Cuba would not accept Petitioner, but determined that the Government of Mexico was accepting some Cuban citizens through third-country removal procedures on a case-by-case basis. (Dkt. 4 at 3.)

Respondents assert that on September 23, 2025, ICE served Petitioner with a Notice of Third Country Removal to notify him of his removal to Mexico. (*Id.* ¶ 22.) However, this notice has not been provided to the Court. Petitioner asserts that he did not learn that ICE intended to pursue third-country removal to Mexico until February, 2026. (Dkt. 12 at 5.)

On October 30, 2025, ICE served Petitioner with a Notice of Continued Detention letter. (Dkt. 4 ¶ 23, Dkt. 4-2 at 1-4.) The letter stated that ICE had determined to keep Petitioner in custody because it believed that his removal to a third country was likely in the reasonably foreseeable future, because he is subject to a final order of removal, because he posed a flight risk if released, and because, due to his convictions for drug trafficking and weapons violations, he posed a threat to public safety if released. (Dkt. 4-

3

2 at 1.)  The letter did not indicate to which country ICE intended to remove Petitioner. (*Id.* at 1-3.)

On January 28, 2026, ICE conducted a post-order custody interview with Petitioner prior to ERO Headquarters' 180-day custody review.  (Dkt. 4 ¶ 24.)  The 180-day review remains pending.  (*Id.*)

Petitioner alleges that in February 2026, ICE conducted an interview with Petitioner in which an agent asked Petitioner to sign paperwork consenting to removal to Mexico.  (Dkt. 12 ¶ 24.)  Petitioner did not sign the paperwork.  (*Id.*)  Petitioner has never been to Mexico and has concerns about removal to Mexico based on his poor health and age.  (*Id.* ¶ 25.)  Respondent's submissions do not mention a February 2026 interview or any attempt to obtain Petitioner's consent to removal to Mexico.

On February 17, 2026, Petitioner filed a pro se Petition for Writ of Habeas Corpus in this matter.  (Dkt. 1.)  On February 18, 2026, United States District Judge Jerry W. Blackwell issued an Order captioned "Order for Response and Enjoining Removal from the State."  (Dkt. 2.)  Respondents filed a response on February 23, 2026.  (Dkt. 3.)  On February 24, 2026, Judge Blackwell referred the Petition to the undersigned for a report and recommendation.  (Dkt. 6.)  On February 24, 2026, the undersigned referred Petitioner to the Federal Bar Association's Pro Se Project.  (Dkt. 7.)  Given that referral, the undersigned extended the deadline for Petitioner to file a reply or amended petition. (Dkt. 8.)

On March 3, 2026, Respondents sought clarification from Judge Blackwell as to whether Respondents were enjoined from removing Petitioner from the state of

Minnesota.  (Dkt. 11.)  On March 4, 2026, Judge Blackwell rescinded the Order for Response and Enjoining Removal from the State (Dkt. 2).  (Dkt. 10.)

Petitioner obtained counsel via the Pro Se Project, and on March 16, 2026, filed an Amended Petition for Writ of Habeas Corpus.  (Dkt. 12.)  The Court ordered Respondents to answer the Amended Petition on or before March 23, 2026.  (Dkt. 13.)

At 3:57 PM on March 17, 2023, Petitioner filed an Emergency Motion for Temporary Restraining Order to prevent his transfer from the District of Minnesota to a facility in Louisiana.  (Dkt. 14.)  At 7:03 PM on March 17, Judge Blackwell issued an order restraining Respondents from removing Petitioner from the District of Minnesota or the United States for a period of 72 hours, and requiring Respondents to file a supplemental declaration regarding the purpose of the anticipated transfer and Respondent's plans for Petitioner's removal.  (Dkt. 15 at 3.)

In a supplemental declaration filed on March 19, 2026, Respondents informed the Court that Petitioner had already been transferred to Louisiana at the time the Court issued its order.  (Dkt. 17 ¶¶ 11-12.)  Specifically, Respondents asserted that Petitioner's flight departed the Minneapolis-St. Paul airport at 2:46 PM and arrived in Louisiana at 5:19 PM.  (*Id.* ¶ 11.)  As to the purpose of the transfer, the declarant stated that "ICE/ERO transferred [Petitioner] to Alexandria, Louisiana on a charter flight in preparation for transfer to an onward border detention facility in Arizona prior to removal to Mexico," because:

> Based on the information that has been relayed to me, the process for presenting Cubans and other third-country nationals to Mexico is handled by the removal coordination units at respective ERO offices in Texas, New

Mexico, Arizona, and California. Mexico has not previously denied or accepted [Petitioner] and the presentation to Mexican immigration is handled by the border facility. To the best of my knowledge, travel documents are not required and no diplomatic assurances or other acceptance materials have been sought or obtained in advance, as this process is mediated by the border ERO offices at or near the time of presentation.

(*Id.* at ¶¶ 7, 11.)  Respondents requested that the Court allow Petitioner's removal to proceed and stay Respondents' briefing obligations.  (Dkt. 16 at 2-3.)

On March 20, 2026, Judge Blackwell issued a Supplemental Order on the Motion for Temporary Restraining Order requiring Respondents to return Petitioner to the District of Minnesota pending the Court's resolution of his Amended Petition for Writ of Habeas Corpus and declining to stay Respondents' obligation to answer the Amended Petition.  (Dkt. 18 at 4.)  Respondents answered the Amended Petition on March 23, 2026, and asserted that Petitioner was scheduled to return to the District of Minnesota on March 24, 2026.  (Dkt. 19 at 3.)  Petitioner filed a reply on March 25, 2026.  (Dkt. 21.) As of the date of this Report and Recommendation, the ICE Detainee Locator website indicates Petitioner is located at the Sherburne County Facility in Sherburne, Minnesota. *Online Detainee Locator System*, U.S. Immigr. & Customs Enf't https://locator.ice.gov/odls/#/results [https://perma.cc/5LP8-WZLN] (last visited March 26, 2026).

## II.    LEGAL STANDARD

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Dkt. 12 at 3.)  Under this provision, a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United

States.  28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States") (citing U.S. Const., Art. I, § 9, cl. 2)).  In general, a habeas petitioner bears the burden of showing that their detention violates the law.  *See Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966).

The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus extends to immigration-related detention after a detention order becomes final.  *Faysal N. v. Noem*, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *2 (D. Minn. Jan. 6, 2026).  The Court has jurisdiction to hear this Petition, which does not challenge the removal order but instead challenges the lawfulness of his continued detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

## III.   DISCUSSION

Petitioner challenges his continued detention on two bases.  First, Petitioner argues that his continued detention is unlawful because there is no significant likelihood of his removal in the reasonably foreseeable future.  (Dkt. 12 at 8.)  Second, Petitioner argues that Respondent's failure to provide written findings of their 180-day custody determination violates Petitioner's due process rights.  (*Id.* at 9.)

Petitioner is detained pursuant to 8 U.S.C. § 1231.  This statute establishes that persons subject to a final order of removal shall be detained during a 90-day removal period.  8 U.S.C. § 1231(a)(1)(A), (2)(A).  The statute also provides for detention beyond

the removal period in some cases.  8 U.S.C. § 1231(a)(6).  However, in *Zadvydas v.*

*Davis*, the Supreme Court "construe[d] the statute to contain an implicit 'reasonable time'

limitation, the application of which is subject to federal-court review" and concluded that

"once removal is no longer reasonably foreseeable, continued detention is no longer

authorized by statute."  533 U.S. at 682, 699.  For the sake of "uniform administration in

the federal courts," the Supreme Court recognized a period of six months during which

detention is presumptively reasonable.  *Id.* at 701.  "After this 6–month period, once the

alien provides good reason to believe that there is no significant likelihood of removal in

the reasonably foreseeable future, the Government must respond with evidence sufficient

to rebut that showing."  *Id.*  And for detention to remain reasonable, as the period of prior

post removal confinement grows, what counts as the 'reasonably foreseeable future'

conversely would have to shrink."  *Id.*  However, the six-month presumption "does not

mean that every alien not removed must be released after six months.  To the contrary, an

alien may be held in confinement until it has been determined that there is no significant

likelihood of removal in the reasonably foreseeable future."  *Id.*

As of the date Petitioner filed his original Petition for Writ of Habeas Corpus, he

had been detained for almost seven months.  Accordingly, his continued detention is not

presumptively reasonable.  The Court proceeds to consider whether Petitioner has

provided good reason to believe that there is no significant likelihood of removal in the

reasonably foreseeable future.  As an initial matter, all parties appear to agree that there is

no significant likelihood of Petitioner's removal to his home country of Cuba.  (*See* Dkt.

12 ¶ 23, Dkt. 3 at 3.)  Instead, the question before the Court is whether there is a significant likelihood of Petitioner's removal to a third country, in this case, Mexico.[3]

Here, Respondents have provided evidence that since October 2025, Mexico has accepted two and denied one Cuban national that ICE ERO St. Paul has nominated for third-country removal.  (Dkt. 4 ¶ 26.)  Respondents assert that "third-country removals to Mexico take place at several southern border field offices on a weekly basis."[4]  (Dkt. 20 ¶ 5.)  While Petitioner has not yet been presented to Mexico for acceptance, Respondents have asserted that "removal presentation to Mexico would be expected to take place within one to two weeks after" the Court lifts the TRO enjoining Petitioner's transfer outside the District of Minnesota.  (Dkt. 17 ¶ 17.)

Petitioner argues that these assertions do not constitute "concrete, individualized proof that removal is significantly likely for [him] in the reasonably foreseeable future." (Dkt. 21 at 3.)  However, based on the regulatory factors, the Court finds Respondents— based on the current record—have shown a significant likelihood of removing Petitioner to Mexico in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(f) (listing factors

---

[3]    The Amended Petition refers to Petitioner's concerns about removal to Mexico, and cites a case from the District of Massachusetts about the process required to effectuate third party removal.  (Dkt. 12 at ¶¶ 25, 27.)  While there is a statutory basis for individuals like Petitioner to seek removal to a third country of their choice, *see* 8 U.S.C. § 1231(b)(2)(A), Petitioner has not argued that he was denied the opportunity to designate a country of his choice.

[4]    It is not clear based on the record whether this process of presenting individuals for removal at the southern border is a requirement of the Mexican government, or whether Respondents could ascertain whether Mexico would accept an individual without transporting that individual to a border state (i.e., while Petitioner remains in Minnesota), but is choosing not to.

including "the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question").  In particular, the record shows that there is a process for Respondents to seek Mexico's acceptance of Cuban nationals, Mexico has accepted two of the three Cuban nationals that ICE ERO St. Paul has nominated for presentation to Mexico since October 2025, Respondents are prepared to undertake that process as to Petitioner, and the process is expected to take one to two weeks.  Petitioner has made no argument that he is less likely than other Cuban nationals to be accepted by Mexico.  Based on the current record,[5] the Court concludes that there is a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future.

The Court next considers Petitioner's procedural due process claim regarding the fact that ICE has not issued a written decision regarding the post-order custody review interview that took place in January, 2026.  (*See* Dkt. 12 at 9.)  It is true that ICE Headquarters has not yet provided a decision letter on Petitioner's 180-day custody

---

[5]   The Court notes that at some point, ICE will learn whether Mexico has accepted or denied Petitioner upon presentation.  If Mexico denies Petitioner, based on the current record, there would no longer be a significant likelihood of Petitioner's removal in the reasonably foreseeable future.  At this point, the parties appear to be at an impasse, as presentation of Petitioner apparently will not occur unless Petitioner is transferred to Texas, New Mexico, Arizona, or California.  (*See* Dkt. 17 ¶¶ 7, 17.)  If objections are filed to this Report and Recommendation, those objections and any response should address how to resolve this impasse.

review.  (*See* Dkt. 20 ¶ 10.)  Of course, "ICE, like all government agencies, must follow its own regulations."  *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).  However, it is not clear to the Court that ICE's delay in issuing this written decision violates any regulation given ICE's active attempts to remove Petitioner.  The Court concludes that a lack of a written decision at this point does not provide a basis to grant habeas relief.

In view of the Court's findings in this case, the Court sets an expedited deadline for objections to this Report and Recommendation.  *See* D. Minn. LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, **unless the court sets a different deadline**.") (emphasis added)).  Any objections to this Report and Recommendation are due on or before **April 2, 2026**.  Responses to objections are due **no later than 3 business days after objections are filed**.

## IV.    RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT** Petitioner Luis S.R.'s Amended Petition for Writ of Habeas Corpus (Dkt. 12) be **DENIED**.

Dated: March 26, 2026

s/Elizabeth Cowan Wright
Elizabeth Cowan Wright
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

11

12

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. **The Court modifies this deadline such that objections are due on or before April 2, 2026.** *See* D. Minn. LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, unless the court sets a different deadline."). **Responses to objections are due no later than 3 business days after objections are filed.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).